**FILED**

SEP 1 7 2012

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Amanda Smith,<br><br>          Plaintiff<br><br>     vs.<br><br>GLENVILLE STATE COLLEGE,<br>through its Board of Governors,<br>DANIEL BELL, Director and Chief of<br>Public Safety for Glenville State College,<br>both in his official and individual capacities,<br>JAYDE LAYNE, an individual, KALA<br>FISHER, an individual, JORDAN WATKINS,<br>an individual, ERIETTA PATRIANAKOS,<br>an individual and<br>JOHN and/or JANE DOES, 1-20<br><br>          Defendants | CIVIL ACTION NO. *1:12cv147*<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Amanda Smith, acting *pro* se, brings the following Complaint before this Honorable Court and avers the following in support thereof:

### JURISDICTIONAL STATEMENT

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.  This Court

also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b), since to the best of Plaintiff's knowledge and belief, all defendants reside in this district, and the events giving rise to the claims occurred in this district.

## PARTIES

3.     The Plaintiff, Amanda Smith, is a twenty old female sexual assault survivor.   Plaintiff was a student at Defendant Glenville State College, ("Glenville") from August 2009 until October 2010.

4.     Glenville State College Defendant is a public college centrally located in Glenville, West Virginia, and it receives federal funds for the operation of the school.   The address for Glenville State College is 200 High Street, Glenville, West Virginia 26251

5.     Defendant Glenville State College Board of Governors ("Board of Governors") is the governing body of Glenville State College, pursuant to West Virginia law, and at all times relevant, the Board of Governors had the authority, power, duty and responsibility to take corrective measures to insure the safety and

welfare of its students including but not limited to hiring and terminating employees who serve in the Glenville Department of Public Safety, in addition implementing policies and rules together with the authority to delegate the same to the Director of Public Safety to insure that such policies and procedures are carried out in a professional manner to secure the safety and welfare of all students on the Glenville State College campus; and, furthermore taking appropriate action, including remedial and corrective action, based upon the presence of sexual harassment or a hostile educational environment.

7.     Defendant Daniel Bell ("Director Bell" or "Chief Bell") is, at all times relevant, the Director of Public Safety and Chief of Public Safety for Glenville State College and was acting with the authority of the Glenville State College Board of Governors in his official capacity.   Director Bell has the authority to conduct investigations, and take corrective measures to secure the safety and welfare of all students on the Glenville State College campus and based upon the presence of sexual harassment or a hostile educational environment.

8.     Defendant Jayde Layne is an adult individual residing in West Virginia who was a student at Glenville State College at all times relevant.

9.     Defendant Kala Fisher is an adult individual residing in West Virginia who was a student at Glenville State College at all times relevant.

10.     Defendant Jordan Watkins is an adult individual residing in West Virginia who was a student at Glenville State College at all times relevant.

11.     Defendant Erietta Patrianakos is an adult individual residing in West Virginia who is was a student at Glenville State College at all times relevant.

11.     John Does and Jane Does, 1-10, are individuals who have yet to be named who were involved in the assault and injury to the Plaintiff or aiding in the cover-up of the assault and injury to the Plaintiff.

## BACKGROUND

11.     On or about September 18, 2010, Plaintiff was drugged with an unknown drug and  assaulted in an on-campus dormitory, Goodwin Hall.  Police reports and hospital reports evidence a report of an alleged "sexual" assault on the Plaintiff.

12.     Plaintiff alleges that other students present at the time of the assault had knowledge as to the perpetrators of the assault but would not reveal the names nor would give truthful accounts as to facts surrounding Plaintiff's assault.

13.     Glenville State College Student Conduct Code has provisions regarding drug and alcohol possession and use, sexual assault and sexual harassment which were not followed.

14.    Glenville State College and its Department of Public Safety showed minimal police and investigative training as to securing evidence related to a crime scene and in its investigation of rape crimes on campus.  As a result, much evidence was destroyed, lost, misappropriated, or contaminated, resulting in a failure to prosecute Plaintiff's assailants.  One investigatory notebook kept by Defendant Director and Chief of the Glenville State College's Department of Public Safety, Daniel Bell was accidently placed in a washing machine and destroyed.

15.    In addition, Glenville Public Safety Director, Daniel Bell, showed minimal training in interrogating witnesses and in questioning the victim of a possible sexual assault, obtaining evidence, preserving evidence and instead chose to argue with the victim and dispute her account of the facts in contravention of routine police rape investigatory techniques.

16.    Promises were made to the Plaintiff  by representatives of Defendant Glenville State College, regarding her status at the college and her status in her current coursework and classes.  Such promises  and reasonable accommodation went unfulfilled by Defendant college upon Plaintiff's receipt of a letter from Provost John Peek advising Plaintiff that she was failing several classes and strongly suggesting that she withdraw from the campus.

17.     By all accounts, all students involved in the incident at Goodwin Hall, were allowed to remain on campus and continue their education.

18.     This is an action to redress a hostile educational environment and sexual harassment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) in addition to violations of the federal Clery Act by the college. This action also seeks recovery for violations of Title IX and the Equal Protection Clause pursuant to 42 U.S.C. §1983 together with separate violations of 42 U.S.C. §1983 as it relates to the conduct of the campus police involved herein.

## FACTUAL HISTORY

19.     Plaintiff incorporates the averments in paragraphs 1-18 above as if stated in full herein.

20.     On or about the morning of September 18, 2010, Plaintiff left her residence at Goodwin Hall, an on-campus dormitory, to report to work at an on campus job, returning to her room shortly before 3:00 p.m.

21.     After returning to her room, Plaintiff changed her clothes and called her mother.  Plaintiff spoke with her mother for approximately one hour.

22.     Student and friend Michael McHenry texted the Plaintiff asking if she wanted to go out for ice cream.

23.     Shortly thereafter, Defendant Jayde Layne knocked on Plaintiff's dorm-room door and requested assistance with the laundry facilities at the dormitory.

24.     Plaintiff then invited Defendant Jayde Layne to come with her and other students for ice cream. During the late afternoon, Plaintiff went out for ice-cream with Michael J. McHenry and Defendants Jayde Layne, Jordan "Opie" Watkins, Erietta Patrianakos together with other unidentified students returning to the dormitory between 5:30 p.m. and 6:00 p.m.

25.     After returning to Goodwin Hall, students Kala  Fisher  and Jayde Layne  stated that they wanted alcohol.

26.     Kala  Fisher  attempted to persuade the Plaintiff to ask Michael McHenry to purchase the alcohol.  Plaintiff declined such request.

27.     Kala  Fisher  then sought the  assistance of Erietta Patrianakos who was of age to purchase the alcohol.  Erietta Patrianakos agreed.

28.     Erietta Patriankakos took the alcohol to the room of Jordan Watkins and is alleged to have left the room to be with her boyfriend.

29.     Plaintiff , together with other students went to Jordan Watkins' room, sat down on a bed in the room and began charging her cell phone.

30.     Jayde Lane began mixing alcoholic drinks in the bathroom sink next to the room.

31.     Plaintiff, without having anything to drink, then left the room at approximately 8:30 p.m. to assist her roommate in carrying groceries to their second floor dorm room.

32.     Plaintiff returned to Jordan Watkins' room and found additional unknown students in the room.

33.     According to Defendant Jordan Watkins, unknown black males were mixing drinks in his room.

34.     Plaintiff sipped a drink offered to her by Defendant Jayde Layne around 9:00 p.m.  Plaintiff had finished only one-half of the plastic cup size drink, when Defendant Jayde Layne brought a different cup of drink, and removed the original cup.  These cups and their remaining contents were later destroyed  by unknown persons and not secured as evidence.

35.     At some point in time between 9:00 p.m. and 10:00 p.m., Plaintiff became nauseous, with alternating bouts of vomiting and urinating, crying and screaming, looking as if she was having a "mild seizure" and in a short amount of time becoming unconscious.

36.     Witness reports state that the Plaintiff was found barely clothed wearing a bra and panties.

37.     Defendants Jayde Layne, Erietta and Kala  Fisher  put the Plaintiff in the shower.

38.     After Plaintiff threw up on herself, Defendant Jordan Watkins states that he provided some of his clothes to Defendant Kala Fisher to put on Plaintiff. Plaintiff's soiled clothes were washed by one or more of the Defendants.

39.     Glenville State College Resident Director Andrew Lewis heard screaming and went to Defendant Jordan Watkin's room to investigate.

40.     Student Travis Nesbitt was studying in his room when he heard a knock at the door.  Upon opening the door, he saw Resident Director Andrew Lewis trying to control a chaotic situation.  Travis Nesbitt began assisting Lewis and administering aid to the Plaintiff

41.     At 10:09 p.m., Glenville Security Officer William Boone received a called from Goodwin dormitory Resident Director Andrew Lewis regarding Plaintiff's condition and requested that EMS be called.  EMS was called at 10:21 p.m.

42.    According to Glenville Security Officer William Boone, "no certified officer was on scene" until Glenville City Police Sergeant Casey Jones arrive and assumed the position of lead investigator.

43.    Travis Nesbitt met the ambulance and assisted with the carrying the medical supplies.  Nesbitt road in the ambulance to the hospital with Plaintiff.

44.    Nesbitt observed Plaintiff holding her hands between her legs stating, "it hurts".

45.    Resident Director, Andrew Lewis, advised that he had found liquor bottles and emptied them into a dormitory sink and took an inventory of the liquor.

46.    The bed sheets upon which Plaintiff had been laying were also laundered with evidence of any bodily fluids destroyed.

47.    Plaintiff was unconscious at admission at Stonewall Jackson Memorial Hospital.  Plaintiff was intubated, catherized and placed in Intensive Care Unit.

48.    Hospital records further evidence of a bodily fluid "pouring out" of the Plaintiff 's vagina that was "not supposed to be there" together with bruising on the Plaintiff's thigh and arm which Defendant Public Safety Director/Chief Daniel

Bell later would accuse Plaintiff of causing herself. Witness statements reflect discharge from the Plaintiff's vagina unusual in color and in amount.

49.    Plaintiff's physical state upon arrival at the hospital prevented the immediate performance of a rape kit test, which eventually was completed approximately seventeen hours after admission.

50.    The rape kit notes acknowledged that the Plaintiff was unconscious at the time of assault and such examination could not be completed until Plaintiff was conscious and could give consent.

51.    Hospital records evidence the presence of a benzodiazepine (commonly used as a "date rape" drug) in Plaintiff's system together with blood alcohol content of .236 of which accumulation is unknown given most witnesses are consistent with their statements that Plaintiff did not drink even a half cup served to her. Plaintiff was not prescribed nor was taking any type of benzodiazepine medication at the time of the incident.

52.    The Sexual Assault Information Form completed the afternoon following the incident reports bruising on Plaintiff's left shin, two bruises to the left knee, bruising on the left upper arm, and a bruise to the left hip. The Form also noted that Plaintiff had a large amount of mucus/discharge from her vagina

that was "white/yellow" in color in spite of the negative findings of vaginitas and the appearance of bacteria in her vaginal opening .

53.    A nurse at the hospital showed Plaintiff's mother a swab of the substance removed from Plaintiff's vagina and stated, "This should not be here".

54.    The West Virginia State Police forensic laboratory report dated January 28, 2011, noted that the case was one of "sexual assault"

55.    A person who is under the influence or unconscious is unable and cannot, by law, consent to any type of  sexual contact.

56.    Defendant Glenville State College had evidently neither repaired nor maintained surveillance cameras present in the dormitories.  Plaintiff's assault was the second known incident where installed cameras were not functioning at the time of the individual assaults.

57.    From the beginning of the investigation, the incident was treated by law enforcement as alcohol poisoning and sexual assault.

58.    Defendant Glenville State College and its Department of Public Safety, including Director/Chief Daniel Bell police failed to follow protocol routine in sexual assault cases including the lack of safeguarding and storing of evidence, the lack of properly securing a crime scene, including the securing of

the clothing worn by the Plaintiff, both sets bed sheets soiled by Plaintiff's and possibly others' bodily fluids, destruction of evidence, and the challenging interrogation techniques towards a possible sexual assault victim, including accusing the victim of placing the bruises found on her body herself.  In addition, Defendant Bell is seemingly under the misunderstanding that the presence of "semen" must be present in the vaginal area to sustain a sexual assault charge together with making alleged statements to a witness that there was "no malice".

59.    The other students responsible for assaulting and/or drugging the Plaintiff were allowed to remain enrolled at the Glenville campus and were not punished by school authorities.  In fact, they were allowed to remain on campus in dormitory facilities.

60.    To date, both Defendants Jayde Layne, Jordan Watkins,  Erietta Patrianakos, and Kala  Fisher, have been uncooperative with the investigation, have refused to identify students in the rooms and have changed their statements regarding the incident in addition to have violated the Student Code of Conduct, but have yet been allowed to remain enrolled at the college.

61.    Jerry Burkheimer, Dean of Student Affairs for Defendant Glenville State College, made statements to Plaintiff reassuring her that the college would

assist her in providing services to allow her to continue her education.  Glenville State College failed to do anything that was promised.

62.    On or about October 7, 2010, Plaintiff received a letter from Glenville State College Provost, Dr. Peek, stating Plaintiff will have failing grades unless she withdraws from school.

63.    Plaintiff moved home after she was forced to leave in October 2010 as a result of sexual harassment and a hostile educational environment given that the perpetrators of this vicious attack were allowed to remain on campus in her dormitory.

64.    Plaintiff's parents, together with Plaintiff, were to meet with Jerry Burkheimer, Resident Director Andrew Lewis and Director/Chief Daniel Bell to withdraw Plaintiff from classes and retrieve her personal belongings from the dormitory.  Neither person appeared at the designated time on the designated date.

65.    Officials for the Defendant Glenville State College took no action against the perpetrators of the assault on Plaintiff and that the School did nothing to separate Plaintiff from the perpetrators.  At no time did the Defendant Glenville State College offer to assist Plaintiff to protect Plaintiff from contact with the Defendant perpetrators, nor did officials inform Plaintiff or her parents of her right to an education free of harassment.

66.     Defendant College refused to implement reasonable accommodations to the Plaintiff so that she could continue her education and finish her classes. Defendant College failed to protect Plaintiff from harassing confrontations with other students and continued contact with the Perpetrators.

67.     Although Defendant Glenville State College employed a Title IX coordinator and its employees and agents had received Title IX training, including having the knowledge in this Title IX training that it could take action against the perpetrators of Plaintiff's assault, they chose not to.

68.     Even though Defendant Glenville College knew of its Title IX obligations, although it had written policies or procedures in place to address student misconduct that occurred on premises, such policies and procedures were not enforced nor followed.  In addition, Defendant Glenville College failed to have adequate policies or procedures to address sexual harassment.

69.     Permanently lost from the investigation of the assault on Plaintiff are Plaintiff's original unlaundered clothing, the alcohol residues from the reported party/celebration in the dorm room including the drink/cup given to Plaintiff, and Director Bell's contact notebook which is said to have been laundered and destroyed, the original hospital bed sheets which were soiled by Plaintiff's vaginal fluid.

70.     Defendant Glenville State College continues to create an environment that made it clear to all that it would favor and protect the Defendant Perpetrators at every turn to the detriment of Plaintiff's education.

71.     In light of the non-stop harassing encounters with the Perpetrators and classmates, as well as Defendant Glenville's unabashed support for the Perpetrators, the hostile environment at the college became unbearable for Plaintiff, and she was forced to withdraw from the college.

72.     It has becomes known to the Plaintiff that other sexual assaults against female students have occurred subsequent to September 18, 2010 incident which are similar in lack of investigatory technique and result.   Since Plaintiff's assault, other female students have come forward to report similar treatment by the Defendant College and its Department of Public Safety, including its Director Defendant Daniel Bell who are considering filing separate claims against the Defendant College.

## VIOLATION OF TITLE IX, 20 U.S.C. §1681

73.     Paragraphs 1-72 of the Complaint are incorporated by reference as if stated in full herein.

74.     Glenville State College and its administrators and employees created and/or permitted to continue sexual harassment and hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a).   Plaintiff was subjected to sexual harassment and a sexually hostile educational environment. In addition, the Defendant College failed to notify the Plaintiff of its Title IX procedures.   Defendant State College officials who had the authority to take corrective measures had actual notice of the harassment and hostile environment, but were in fact deliberately indifferent to the harassment and hostile environment.

75.     Plaintiff has suffered severe and permanent psychological damage, emotional distress, and decreased educational opportunities as a direct and proximate result of the Defendant Glenville State College's violations of her rights under Title IX.

76.     WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Glenville State College for compensatory damages, punitive damages, interest, costs, and attorney fees.

## VIOLATION OF 42 U.S.C. §1983
## (EQUAL PROTECTION)

77.     Paragraphs 1-76 of the Complaint are incorporated by reference as if stated in full herein.

78.    Plaintiff had the right to equal protection of the laws and an educational environment that was free from harassment pursuant to the Fourteenth Amendment to the United State Constitution and Title IX.

79.    Defendants, while acting under color of state law, violated these rights and unlawfully discriminated against Plaintiff and subjected Plaintiff to disparate treatment.

80.    Defendants implemented a policy, pattern, custom, and practice of treatment of   Plaintiff   with deliberate indifference towards Plaintiff and others similarly situated, and this policy, pattern, custom, and practice proximately caused a violation of Plaintiff's constitutional rights to equal access to an education, and an education free of harassment and a non-hostile educational environment.

81.    WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Glenville State College for compensatory damages, punitive damages, interest, costs, and attorney fees.

## VIOLATION OF 42 U.S.C. §1983
## (FAILURE TO TRAIN)

82.    Paragraphs 1-81 of the Complaint are incorporated by reference as if stated in full herein.

83.    Defendants Glenville State College, through its Department of Public Safety and Director/Chief Daniel Bell have severely failed to train and educate its

employees regarding proper police and investigative procedures, adopt policies and procedures of investigation, follow proper investigation protocol including witness interviews, preserving a crime scene and evidence, and also in providing security and police protection on campus evidences a deliberate indifference to the rights of persons with whom the police come into contact. In addition, Defendant College has violated the provisions of the Federal "Clery Act", 20 U.S.C.§1092(f) and which requires notification and reporting of on campus crimes to students.

84.   The failure of Glenville State College and its Department of Public Safety, including Director Bell, as an official and in his individual capacity, to provide training to its law enforcement employees reflects deliberate indifference to the constitutional rights of the school's female students, including the Plaintiff.

85.   The failure of Defendant Glenville State College, its Department of Public Safety, including Director Bell, as an official and in his individual capacity was the direct and proximate cause of Plaintiff's injuries.

86.   Plaintiff has suffered severe and permanent psychological damage, emotional distress, and decreased educational opportunities as a direct and proximate result of Defendant Glenville State College and its Department of Public Safety's, including Director Bell, as an official and in his individual capacity, violations of 42 U.S.C. §1983.

87.     WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Glenville State College for compensatory damages, punitive damages, interest, costs, and attorney fees.

## VIOLATION OF 42 U.S.C. §1983
### (RETALIATION)

88.     Paragraphs 1-87 of the Complaint are incorporated by reference as if stated in full herein.

89.     Plaintiff and her family continued to press Defendants for information regarding the circumstances surrounding her assault.

90.     Plaintiff and her family were considered "trouble-makers" in pressing for information.

91.     Instead of Defendant College assisting Plaintiff, Defendant College chose to allow the Perpetrators to continue at the school.  Plaintiff felt chastised unsupported by the College and felt pressured to withdraw.

92.     Because of the pattern of antagonistic conduct and hostile environment created by Defendant Glenville State College against Plaintiff and her family, Plaintiff was forced to withdraw from the college.

93.     On or about December 27, 2010, Plaintiff filed an administrative claim against Defendant Glenville State College with the United States Department of Education alleging that Defendant Glenville State College failed to respond

appropriately to the assault that occurred on September 18, 2010 which forced Plaintiff's withdrawal from the school.

94.    As a result of the complaint, Defendant Glenville State College caused a Title IX investigation to proceed with was completed on or about July 25, 2012 – almost two years after the incident – and which came to the predictable conclusion of Plaintiff's injuries, assault and being drugged, were unsubstantiated.

95.    Plaintiff has suffered severe and permanent psychological damage, emotional distress, and decreased educational opportunities as a direct and proximate result of Glenville's violations of 42 U.S.C. §1983.

96.    WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Glenville State College for compensatory damages, punitive damages, interest, costs, and attorney fees.

## ASSAULT AND BATTERY

97.    Paragraphs 1-96 of the Complaint are incorporated by reference as if stated in full herein.

98.    Defendants Jayde Layne, Kala Fisher, Jordan Watkins, Erietta Patrianakos, and John/Jane Does 1-10, jointly and severally, on September 18, 2010, while on campus at Glenville State College dormitory did unlawfully and

intentionally made physical contact of an insulting or provoking nature with the Plaintiff and caused physical harm to the Plaintiff.

99.    Such harm caused by the aforesaid Defendants, jointly and severally, was the direct and proximate cause of the Plaintiff's injuries.

100.   Plaintiff suffered physical and emotional injuries, medical and other expenses related to those injuries, in addition to lost educational opportunities.

101.   WHEREFORE, Plaintiff demands that judgment be entered in her favor and against the Defendants Jayde Layne and John/Jane Does 1-10 for compensatory damages, punitive damages, interest, costs, and attorney fees, jointly and severally.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102.   Paragraphs 1-96 of the Complaint are incorporated by reference as if stated in full herein.

103.   The conduct of all Defendants, Glenville State College and its Department of Public Safety, including Director/Chief Daniel Bell, Jayde Layne, Kala Fisher, Jordan Watkins, Erietta Patrianakos and John/Jane Does 1-10, jointly and severally, was undertaken with the purpose of inflicting emotional distress of when the Defendants acted recklessly when it was certain or substantially certain that emotional distress would result from such conduct .

104.   Defendants' conduct and actions against the Plaintiff was severe, extreme and outrageous in character and degree as to go beyond all bounds of decency and be atrocious and utterly intolerable in a civilized community.

105.   WHEREFORE, Plaintiff demands that judgment be entered in her favor and against the Defendants Jayde Layne and John/Jane Does 1-10 for compensatory damages, punitive damages, interest, costs, and attorney fees, jointly and severally.

Date:                                                    Respectfully Submitted,


                                                         _Amanda L. Smith_
                                                         Amanda Smith, Plaintiff

Plaintiff's address:

P.O. Box 422 Mineral
Wells, WV 26150